UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA, Appellee

v.

PAUL VAN MANEN, Defendant-Appellant

July 1, 2021

DC Docket: 1:18-cr-30-3
DC Court SDNY (NYC)
DC Judge Crotty

Debra Ann Livingston
Docket #: 19-3521cr
Short Title: United States of America V. Kosic (Van Manen, Appellant)

**Request for Petition for Rehearing and Rehearing en banc**

I, Paul Van Manen, inmate 79919-054, at FCI Fort Dix, P. O. Box 2000, Fort Dix, New Jersey 08640 Correctional am requesting a Petition for Rehearing and Rehearing en banc. I humbly ask that you would consider my request and have stated my reasons for such below.

1. **Ineffective Counsel:**
    A) Counsel did not oppose/contest motions in limine; excluding testimonies and evidence and other pertinent information relevant to the case.
    B) Counsel did not procure witnesses for the defense and did not due his due diligence when trying to secure a witness.
        In the Prosecutors rebuttal to my appeal, it states:
            1. Van Manen failed to meet his burden under both Federal Rule of Evidence 702 and Federal Rule of Criminal Procedure 16 which is the reason for Judge Crotty excluding expert testimony.

> 2. On May 12, 2019, Van Manen stated his intent to call Dr. Powers because "the government is no longer calling a toxicology expert," but did not supplement his expert disclosure. (A. 447). The Government renewed its motion to preclude Dr. Powers' testimony primarily because the defense had not cured the defects in its inadequate expert disclosure.

(A. 447-48. Case 19-706, Document 133, 08/21/2020, 2914524, Page26 of 9318)

C) Counsel did not oppose the 12-woman jury, as a white bi-sexual male this is a gender bias issue. (See: Batson v. Kentucky 476 U.S. 79, 1986)

D) Counsel did not speak confidentially with defendant. Counsel spoke about case and strategies on the prison phone and through prison email which are recorded, and the prosecution had access to. Thereby violating the attorney/client privilege and allowing the prosecution to sandbag any defense strategies.
For example: When denied our expert witness from testifying, counsel assured me that we would be able to cross-examine the government's toxicologist, but this defense was sandbagged by prosecutor who removed the toxicologist at the last-minute.

E) The hearsay of Anthony Ogno, the brother of the deceased Michael Ogno was detrimental. Anthony Ogno was present the morning of his brother's death and stated that it could have been someone else. The government stated on record at the motion hearing that the defense would have an opportunity to cross examine him because he was expected to be a witness for the government, but then Anthony Ogno was never presented, and the defense was unable to question him, and counsel did not secure him as a witness.

F) My counsel advised me to lie on the stand about the last time that I saw Mr. Ogno. In the proffer session on February 14, 2018, I stated on record what I said about the last time I saw Mr. Ogno.

G) Counsel did not oppose blatant leading of witnesses by prosecutors. For example please see Shaun Sullivan's testimony below.

### A.-250 Page 150

Line:

    14. Who did you understand Paul's primary supplier to be?
    15. I didn't know him.
    16. Over the time that you worked with Paul do you know who he primarily got Heroin from?
    17. Dino.

2. **12-woman jury:** The gender, race and sexual orientation of the jurors tend to impact a case. As a male who also identified as a bi-sexual I believe that having an all-female jury was biased. (See: Batson v. Kentucky 476 U.S. 79, 1986)

3. **Prosecutorial Misconduct:**

A). Withholding Evidence by Prosecution:
Michael Ogno had 2 phones that he used simultaneously. On December 1, 2017, when I was texting with him, we texted on both phones and the defendants' full conversations with Mr. Ogno were not revealed. The Prosecution claims on page 9 of their rebuttal that our messages began at 11:03 A.M. yet that is a lie. If you look at Add. 23 closely, you can see that there was a message at 10:48 A.M. These other messages, both before the 11:03 A.M. one and on the other phone of Mr. Ogno they can clarify the context of the conversation between Van Manen and Ogno and that there was no sale confirmed. These were purposely left out to mislead the jury. See Prosecution's Appeal rebuttal below:

> Phone records revealed that they spoke several times by phone that
> day and then confirmed the sale of a "bunny"— which
> Van Manen acknowledged was code for a bundle (i.e.,
> ten glassines) of heroin (A. 570 (Tr. 1391))—in a series
> of text messages beginning at 11:03 a.m., which were
> recovered from Ogno's cellphone
> Ogno: Ur coming to me right ?
> Van Manen: I m getting your money gram and then I'm coming to dinner
> Ogno: Ok we're having turkey

> Van Manen: Omw now about 10 min
> Ogno: Ok So u wanna gimme the bunny I'll owe it to u Sunday
> Van Manen: Thats what we said we were doing right
> Ogno: Yes sir
> (A. 316 (Tr. 415-16); Add. 23).
> At 11:22 a.m., Van Manen went to a Moneygram store near Ogno's house and picked up a money order for $180 that Ogno had sent him (A. 307 (Tr. 378-79)), and about twelve ―――――

B). In their Appeal Rebuttal, it seems that the Prosecution tried to mislead the Appeals Committee. After the above statement (found in 3. A). that is found on page 9 of their rebuttal the Prosecution inserted this statement which happened on October 22, 2017, not on December 1, 2017:

> Add. 21-22). Shortly after this phone call, law enforcement officers who were conducting surveillance near Ogno's home observed Van Manen arrive and give Ogno a "small object" in exchange for money. (A. 293 (Tr. 322-24)).

C). Incomplete evidentiary to reject the defendants claim that the government's failure to disclose and preserve the cellphone constituted a denial of due process. The 2nd cell phone was not revealed because that phone would reveal the missing parts of the conversation between myself, (Paul Van Manen) and Mr. Ogno. In Jessica Fyfe's testimony she confirmed that Michael talked and texted on both phones that day as well as many times before. Miss Fyfe also never mentioned seeing any "bundle" in Mr. Ogno's apartment.
(See case law: U.S. vs Johnson # 19-4331)

### A. 401 - Page 760

Line:

18 &19. At some point on the morning of December 1st Michael stopped answering your calls right?

20. Yes.

21. And he stopped answering your texts?

22. Yes.

23. You tried him on both of his phones?

24. Yes.

25. He was using both of his phones at the same time right?

### A. 402 - Page 761

1. I believe so, yes.

2. An iPhone that he used regularly?

3. Yes.

4. And a Samsung Galaxy, right?

5. Yes.

### A. 403 – Page 767

3 & 4. You gave them Michael's phones?

5. Yes.

6. And you told them he used them both regularly?

7. Yes.

D). The Prosecutor promised to present specific witnesses whose testimonies would have impacted this case and in good faith my lawyer did not try to procure them on his own. We were told that we would be able to cross examine them but that did not. The first witness was Anthony Ogno, the brother of the deceased Michael Ogno. When the defense tried to interview Anthony Ogno, he was never available and then was not presented as the government's witness for cross-examination. This is another violation of my constitutional rights. They did it twice, the second witness was the toxicologist that the Defense was planning to cross examine vigorously.

E). When Jessica Fyfe found Mr. Ogno, the government stated that she saw white powder and a syringe nearby. Where are the test results, that were done on the white powder and syringe? In the United States V. Michael Jones 01/22/2020 2nd Cir. SDNY, in one of his case files there is a CDC report of the Benzodiazepine's deaths in 2017. It states that with Xanax alone, there were

1609 deaths in 2017 and this case also brings to light that Alprazolam (aka Xanax) is known to be made with fentanyl.

F). The evidence for the alleged overdose of Shaun Sullivan was misleading because the test results of drugs that were presented were from when Mr. Sullivan was arrested for a possession charge not from when he allegedly overdosed.

4. **Sentence**: While I was on the stand as Judge Crotty called for a recess, he made a comment which others in the courtroom also heard. He said the charges do not fit the crime. I do not believe that my trial or sentence were fair. Yes, I broke the law, I never denied that. I believe that the appropriate charge should have been a B1C with a guideline range of 33-41 months. Yes, I sold drugs to fuel my addiction, but it wasn't to make money, nor was I part of any conspiracy or drug trafficking organization. I was never a career offender and the B/A with a guideline of 262/327 is just that, a career offender. I was an addict who got hooked on Heroin due to an addiction to pain pills prescribed by my pain management doctor for health issues.

Due to my addiction, I lost everything I ever had and even became homeless. I was a business owner, and I lost my businesses, I was a landlord that owned an apartment building that I also lived in, and I lost those too. I lost my cars, bank accounts, credit, status, and my home in Florida. I was homeless, living in a hotel and selling drugs to feed my addiction. I bought drugs for myself and my friend Doreen Spinelli, whom I was staying with at the hotel. I am truly sorry for my actions and wish that I could take it all back. Before my addiction I was a productive member of society. I reiterate that I believe that the trial was unfair and again that I was not a part of any conspiracy. My life speaks for itself, I was well into my late 40's, (46 to be exact) before I ever got a possession charge. I became an addict after being prescribed medication for pain, I would never have possessed drugs before being an addict. I hate everything about drug dealers, gangs, etc. and I am disgusted that I was one of them. It was purely out


of desperation. I am asking for this sentence to be vacated and if need be, a new trial. I am appealing to this board for justice to be served. My rights to a fair trial, effective counsel and due process have been violated and I appealing to the court of appeals for justice. I ask that you reconsider my appeal and vacate this sentence and/or grant me a new trial. I thank you for your time.

Sincerely,


Paul Van Manen

# CERTIFICATE OF SERVICE

I certify that a copy of this motion has been served by OVERNIGHT MAIL to:

The United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

And:

The United States Attorney's Office
Southern District of New York,
Attention Ryan Finkel, Esq., AUSA
1 St Andrews Plaza
New York , NY 10007

# FedEx Express



*The World*

ORIGIN ID:DJQA (347) 356-1132
PAUL VAN MANEN
FCI FORT DIX 79919-054
PO BOX 2000

SHIP DATE: 02JUL21
ACTWGT: 0.50 LB
CAD: 111014195/INET4340

BILL SENDER

TO  US COURT OF APPEALS FOR 2ND CIRCUIT
THURGOOD MARSHALL US COURTHOUSE
40 FOLEY SQ
NEW YORK NY 10007

FORT DIX, NJ 08640
UNITED STATES US

56DJ20265/FE4A

FedEx
TRK# 7741 6993 6734  0201

E3 PCTA

TUE – 06 JUL AA
PRIORITY OVERNIGHT

10007
NY-US EWR